UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

LOUIS VUITTON MALLETIER                :

                    Plaintiff,    :    04 Civ. 4200 (DAB)(HBP)

    -against-                    :    REPORT AND
                                       RECOMMENDATION
ARTEX CREATIVE INTERNATIONAL,     :
CORPORATION, et al.,
                                  :

                    Defendants.   :

----------------------------------X

          PITMAN, United States Magistrate Judge:

          TO THE HONORABLE DEBORAH A. BATTS, United States

District Judge,

I.  Introduction

          Plaintiff, Luis Vuitton Malletier ("LVM"),  commenced

this action for counterfeiting, alleging claims for unfair

competition, trade dress and trademark infringement in violation

of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a),(c), on June 4,

2004.  Defendants, Artex Creative International and ten John

Does, did not timely answer or move with respect to the complaint

and on June 6, 2005, the Honorable Richard Owen, United States

District Judge, entered a default judgment and referred this

matter to me to conduct an inquest concerning LVM's damages.

Pursuant to the Order of Reference, I issued a Scheduling Order on July 11, 2005 directing LVM to serve and file proposed findings of fact and conclusions of law by August 19, 2005 and directing defendants to submit responsive materials by September 19, 2005.  My July 11, 2005 Scheduling Order further provided:

> Defendant Artex Creative International Corporation shall submit its response  to plaintiff's submissions, if any, no later than September 19, 2005.  <u>IF DEFENDANT ARTEX CREATIVE INTERNATIONAL CORPORATION (1) FAILS TO RESPOND TO PLAINTIFF'S SUBMISSIONS, OR (2) FAILS TO CONTACT MY CHAMBERS BY SEPTEMBER 19, 2005 AND REQUEST AN IN-COURT HEARING, IT IS MY INTENTION TO ISSUE A REPORT AND RECOMMENDATION CONCERNING DAMAGES ON THE BASIS OF PLAINTIFF'S WRITTEN SUBMISSIONS ALONE WITHOUT AN IN-COURT HEARING.</u>  See <u>Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.</u>, 109 F.3d 105, 111 (2d Cir. 1997); <u>Fustok v. ContiCommodity Services Inc.</u>, 873 F.2d 38, 40 (2d Cir. 1989) ("[I]t [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment.")

(Docket Item 7)(emphasis in original).

LVM subsequently requested two extensions of the deadline to file it's proposed findings of fact and Conclusions of Law in order to conduct discovery of defendants' profits.  I granted both extensions, and LVM submitted its Proposed Findings of Fact and Conclusions of Law in support of its application for damages on March 23, 2006.

Copies of my July 11, 2005 Scheduling Order and my two Orders granting LVM's extensions, were sent to the defendants at the address at which they was served.  Despite being served with

2

a copy of these Orders, the motion for default judgment and the complaint in this action, defendants have not made any written submission to me, nor have the defendants contacted the Court in any way.

Accordingly, on the basis of LVM's written submissions alone, I recommend that your Honor adopt the following findings of fact and conclusions of law.

II.  Findings of Fact

A.  The Parties

1.  Plaintiff, LVM, is a corporation organized and existing under the laws of France, having its principal place of business at 2 Rue du Pont Neuf 75001, Paris, France (Compl. ¶ 8[1]; Plaintiff's Proposed Findings of Fact and Conclusions of Law, dated March 22, 2006 ("Plf.'s Proposed Findings") ¶ 1).  LVM is engaged in the business of importing and selling designer hand-bags and other luxury items within the United States.

---

[1]As a result of defendants' default, all the allegations of the Complaint as to them, except as to the amount of damages, must be taken as true.  Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158-59 (2d Cir. 1992); Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 69-70 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363 (1973); Wing v. East River Chinese Rest., 884 F. Supp. 663, 669 (E.D.N.Y. 1995); Deshmukh v. Cook, 630 F. Supp. 956, 959 (S.D.N.Y. 1986).

2.   Defendant, Artex Creative International Corp.
("Artex"), is a California corporation having its principal place
of business at 21720 South Wilmington Ave. #304, Long Beach,
California, 90810 (Compl. ¶ 10; Plf.'s Proposed Findings ¶ 2).
Artex imports a variety of products, including handbags, which it
sells on its website www.artexusa.com.  Artex also frequently
acts as a broker, arranging for American companies or consumers
to purchase cheap goods from manufacturers located in China
(Deposition of Roger Himmel, dated Nov. 15, 2005, ("Himmel
Depo.") at 10, 18, attached as Ex. E to the Affidavit of Theodore
C. Max, Esq. ("Max Decl."), dated March 22, 2006).

B.   LVM's Trademarks

3.   LVM is a famous design firm that owns the trade-
marks for a series of designs featured on high end luggage,
handbags, jewelry and accessories that it sells under the Louis
Vuitton name (Compl. ¶ 15).  LVM's trademarks include the "Toile
Monogram", which features the entwined LV initials with three
symbols -- a curved diamond with a four point star inset, its
negative (i.e. the star inset) and a circle with a four-leaf
flower (see Registrations of the United States Patent and Trade-
mark Office, attached as Ex. A to the Compl.).  These designs are
the subject of the following trademark registrations:

| Mark | Registration/Serial No. | International Class |
|------|------|------|
| | 0,297,594 | 18 |
| TOILE MONOGRAM | 1,770,131 | 25 |
| (on a variety | 2,399,161 | 25 |
| of products) | 1,643,625 | 18 |
| | 1,653,663 | 18 |

MISCELLANEOUS DESIGNS

| | | |
|------|------|------|
| Circle with a Four-Leafed Flower | 2,181,753 | 14,18,25 |
| Diamond with Star/Flower Inset | 2,773, 107 | 14,18,25 |
| Inset-Star/Flower Pattern | 2,177,828 | 14,18,25 |

4.    In 2002, designer Marc Jacobs and Japanese artist Takashi Murakami introduced several new designs incorporating LVM's signature Toile Monogram trademarks.  The new designs were featured in the following collections:  (1) "Monogram Multicol-ore" offering the Toile monogram in thirty three different colors; (2) the "Eye Love Monogram", featuring a colorful Louis Vuitton toile monogram with the addition of a Murakami eye symbol, (3) the "Monogram Cherry Blossom", integrating several colorful cherry blossoms with the Toile Monogram; (4) "the Murakami Characters", a collection of Murakami Characters super-imposed upon the toile monogram (collectively the "Murakami Trademarks")(see the Louis Vuitton Monogram Murakami Trademarks, attached as Ex. B to the Compl.).

5.    These four collections were launched on October 7. 2002 at the Louis Vuitton Spring 2003 Fashion Show in Paris.  The

collections were extremely successful; as of June 2004, in excess
of seventy thousand Louis Vuitton Toile Monogram Murakami Hand-
bags and accessories valued at over $40 million dollars had been
sold in the United States alone (Compl. at ¶ 35).  These collec-
tions received extensive praise and publicity from the leading
fashion magazines and news media (Compl at ¶¶ 24-33, 40-45).

    6.  LVM devoted nearly four million dollars to market,
promote and advertise handbags featuring the Murakami trademarks
(Compl. at ¶ 34).

    7.  Based on the extensive sales of the Murakami
collections and their wide popularity, the Murakami Trademarks
have developed secondary meaning and significance in the minds of
the purchasing public, and the products utilizing and/or bearing
such marks and names are immediately identified by the purchasing
public with LVM (Compl. at ¶¶ 27-46).  As a result, the Murakami
Trademarks and the goodwill associated therewith is of inestima-
ble value to LVM.

    C.  Defendants'
        Infringing Activities

    8.  Defendant, Artex, sells a collection of handbags
marketed as the Country Club Collection through its website.
These handbags bear designs that are virtually identical[2] to

---

[2]The only identifiable difference between LVM's Monogram
                                              (continued...)

Louis Vuitton's Monogram Multicolore Trademarks.  Many of the infringing handbags incorporate multicolored images of a curved diamond with a four point star inset, a star which bears distinct similarities to LVM's star inset and a circle with a four-leaf flower (see Images of Defendants' Country Club Collection, attached as Ex. K, L to the Compl.).

9.  Artex's counterfeit handbags are sold to purchasers in New York (Compl. ¶ 54; see also Invoice for Order Placed by Louis Vuitton's Representative in New York, attached as Ex. C to the Max Decl.).

10.  These counterfeit handbags are likely to cause confusion in the minds of consumers, dilute the Louis Vuitton trademark's ability to identify LVM as the source of goods, and create the false impression that there is some association between LVM and the counterfeit handbags (Compl. ¶¶ 56, 58).

11.  The counterfeit handbags were not manufactured, distributed and/or sold by LVM or with LVM's authorization, consent, license or approval and are of an inferior quality to LVM's genuine products (Compl. ¶ 53).

---

[2](...continued)
Multicolore collection and Artex's Country Club collection is that Artex's products do not contain the entwined LV initials and there is a slight difference in the star inset utilized by Artex.

12.   Artex has infringed the Murakami Trademarks by manufacturing, distributing and selling handbags decorated with LVM's trademarks.

13.   Artex's activities constitute willful and intentional infringement of the Murakami Trademarks, are in total disregard of LVM's rights and were commenced and have continued in spite of it's knowledge that the use of any of LVM's Trademarks, or copies or colorable imitations thereof, is a violation of LVM's rights.

## III.   Conclusions of Law

### A.   Jurisdiction and Venue

14.   This action arises under the Trademark Act, 15 U.S.C. §§ 1051 et seq.  The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. §§ 1331, 1338 and 15 U.S.C. § 1121.

15.   The Court has supplementary jurisdiction over the state-law claims asserted in the complaint pursuant to 28 U.S.C. § 1367(a).

16.   The Court has personal jurisdiction over the defendants because defendants conducted business in New York and shipped their product to New York, in connection with a purchase made by LVM (Compl. ¶ 54).  See Gucci Am., Inc. v. MyReplicaHandbag.com, 07 Civ. 2438 (JGK), 2008 WL 512789 at *2

8

(S.D.N.Y. Feb. 26, 2008), <u>citing</u> <u>Baron Philippe de Rothschild,</u>
<u>S.A. v. Paramount Distillers</u>, 923 F. Supp. 433, 436-37 (S.D.N.Y.
1996).

17.  Venue in this district is proper pursuant to 28
U.S.C. §§ 1391(b),(c), 1392.

B.  Defendants are Guilty of Trademark
    <u>Infringement and Counterfeiting</u>

18.  Artex's handbags bear marks that are virtually
indistinguishable from LVM's Trademarks including its circle with
a four-leafed flower (Reg. No. 2,181,753), its diamond with a
star/flower inset (Reg. No. 2,773,107), and the inset itself, a
star/flower pattern (Reg. No. 2,177,828).  The combination of
these marks in a variety of colors superimposed on a leather or
deep chestnut background creates an overall product that is
virtually indistinguishable from LVM's collection of handbags
bearing the Toile Monogram (Reg. No. 0,297,594, Reg. No.
1,770,131, Reg. No. 2,399,161, Reg. No. 1,643,625, and Reg. No.
1,653,663).  Artex's marketing and sale of the handbags bearing
these marks constitutes (1) trademark counterfeiting and in-
fringement, in violation of Section 32 of the Lanham Act, 15
U.S.C. § 1114; (2) false designation of origins, in violation of
Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) trade-
mark dilution, in violation of section 43(c) of the Lanham Act,
15 U.S.C. § 1125(c) and the New York Anti-Dilution Statute, New

York General Business Law § 360-I, 360-K; and (4) state common law torts including trademark infringement and unfair competition.

19.  Because the marks used by Artex on its handbags are virtually identical to the marks belonging to LVM as identified in the foregoing paragraph, the conclusion is inescapable that Artex's infringement and counterfeiting is intentional. See Phillip Morris USA Inc. v. Marlboro Express, 03-CV-1161 (CPS), 2005 WL 2076921 at *6 (E.D.N.Y. Aug. 26, 2005); Nike, Inc. v. Top Brand Co., 00 Civ. 8179 (KMW), 2005 WL 1654859 at *10 (S.D.N.Y. July 13, 2005) ("[t]he standard for willfulness is whether the defendant had knowledge that [his] conduct represented infringement or perhaps recklessly disregarded the possibility."); see also Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, 80 F.3d 749, 753-54 (2d Cir. 1996); Tanning Research Lab., Inc. v. Worldwide Imp. & Exp. Corp., 803 F. Supp. 606, 610 (E.D.N.Y. 1992), quoting Louis Vuitton S.A. v. Lee, 875 F.2d 584, 590 (7th Cir. 1989) ("[w]illful blindness is knowledge itself").  Indeed, I can infer that the defendants acted willfully, by virtue of their default in this action.  See Malletier v. Whenu.Com, Inc., 05 Civ. 1325 (LAK), 2007 WL 257717 at *4 (S.D.N.Y. Jan. 26, 2007); Tiffany (NJ) v. Luban, 282 F. Supp.2d 123, 124 (S.D.N.Y. 2003); Fallaci v. The New Gazette Literary Corp., 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983).  This conclusion is reinforced by the

fact that Artex's Vice President conceded knowledge of the similarity between his company's product and LVM's trademarks when he stated in a letter to LVM's counsel "we learned too late that consumers actually want true knock-offs with the LV initials on the bag." (Letter from Roger Himmel to Theodore C. Max, Esq., dated June 8, 2004, attached as Ex. A to the Max Aff.; Himmel Depo. at 64). Finally, the fact that the items in the Country Club Collection were listed on Artex's internal invoices as "V Lady Bags" also appears to indicate knowledge of the similarity between this collection and LVM's trademarks.

C. <u>Damages</u>

20.  LVM has elected for an award of statutory damages under 15 U.S.C. § 1117(c)[3] (Plf.'s Proposed Findings at 34-36).

1.  <u>Statutory Damages</u>

21.  Under the Lanham Act, a trademark owner may elect to recover an award of statutory damages instead of actual damages.  15 U.S.C. § 1117(c).  The court may award statutory

---

[3]In LVM's proposed findings of fact, it states that it is "entitled to statutory damages" and "may opt for statutory damages on its Lanham Act claims" (Plf.'s Proposed Findings at 34).  LVM, however, also argues that it is entitled to "actual" damages under 15 U.S.C. § 1117(b).  Because I have concluded that statutory damages should be assessed in an amount equivalent to the amount of damages that LVM would have received under 15 U.S.C. § 1117(b), LVM's failure to specifically elect statutory damages is immaterial.

damages between $500 and $100,000 "per counterfeit mark per type of goods sold as the court considers just" or if the court finds the use of the mark to be have been willful up to $1,000,000 "per counterfeit mark per type of good as the court considers just." 15 U.S.C. § 1117(c).  LVM seeks $4,000,000 in statutory damages for Artex's willful use of counterfeit versions of four registered marks, Registration Nos. 2,297,594; 2,181,753; 2,177,828; and 2,773,107.

22.  The Lanham Act "does not provide guidelines for courts to use in determining an appropriate award" and courts are only limited by what they consider just.  Gucci Am., Inc. v. Duty Free Apparel, Ltd., 315 F. Supp.2d 511, 520 (S.D.N.Y. 2004), quoting Louis Vuitton Malletier & Oakley, Inc. v. Veit, 211 F. Supp.2d 567, 583 (E.D. Pa. 2002).  As explained by the Honorable Victor Marrero, United States District Judge, courts have used the following factors, gleaned from an analogous provision of the Copyright Act, 17 U.S.C. § 504(c), as guidance in determining a statutory damages award:

> (1) "the expenses saved and the profits reaped;" (2) "the revenues lost by the plaintiff;" (3) "the value of the copyright;" (4) "the deterrent effect on others besides the defendant;" (5) "whether the defendant's conduct was innocent or willful;" (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced;" and (7) "the potential for discouraging the defendant." Fitzgerald Pub. Co. v. Baylor Pub. Co., 807 F.2d 110, 117 (2d Cir. 1986)

Gucci Am., Inc. v. Duty Free Apparel, Ltd., supra, 315 F. Supp.2d at 520; Louis Vuitton Malletier v. Whenu.com, Inc., supra, 2007 WL 257717 at *4; Sara Lee Corp. v. Bags of N.Y., Inc., 36 F. Supp.2d 161, 166 (S.D.N.Y. 1999).

23. District courts have wide discretion in awarding statutory damages, Danone Asia Pte. v. Happy Dragon Wholesale, Inc., 05-CV-1611 (CPS), 2006 WL 845573 at *7 (E.D.N.Y. March 29, 2006), citing Cable/Home Commc'n Corp. v. Network Prod., Inc., 902 F.2d 829, 852 (11th Cir. 1990), and courts have reached a wide range of results in assessing statutory damages based on the profitability of the defendant's business.[4]  The typical starting point for assessing statutory damages is actual damages, such as plaintiff's loss and defendant's profits.  See Sara Lee Corp. v. Bags of N.Y., Inc., 36 F. Supp.2d 161, 167 (S.D.N.Y. 1999).

---

[4]See Ermenegildo Zegna Corp. v. 56th St. Menswear, Inc., 06 Civ. 7827 (HB)(GWG), 2008 WL 2567791 at *4 (S.D.N.Y. June 26, 2008) (awarding $200,000 per infringed mark); Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc., 03 Civ. 2132 (GBD)(KNF), 2006 WL 728407 at *6-*7 (S.D.N.Y. March 21, 2006)(awarding $125,000 per infringed mark for a total of $375,000.00); Nike, Inc. v. Top Brand Co. Ltd., supra, 2006 WL 2946472 at *3 (awarding $1,000,000 per infringed mark per type of good); Phillip Morris USA, Inc. v. Marlboro Express, supra, 2005 WL 2076921 at *6 (awarding a lump sum of $4,000,000 based on an estimate that the defendant's counterfeiting operation earned $4,773,790); Gucci Am., Inc. v. Duty Free Apparel, Ltd., supra, 315 F. Supp.2d at 521-22 (awarding $2,000,000 total for two infringing marks); Louis Vuitton Malletier v. Veit, supra, 211 F. Supp.2d at 584-85 (awarding a total of $1,000,000 for defendant's infringement of six Louis Vuitton marks); Polo Ralph Lauren, L.P. v. 3M Trading Co., Inc., 97 Civ. 4824 (JSM)(MHD), 1999 WL 33740332 at *8 (S.D.N.Y. April 19, 1999) (awarding $25,000 per infringed mark to one group of plaintiffs and $500 to another group of plaintiffs).

Therefore, in order to determine the proper amount for a statutory damages award, I shall first evaluate the "actual damages" that LVM would be entitled to under 15 U.S.C. § 1117(a),(b).

2.   <u>Actual Damages</u>

24.   Under 15 U.S.C. § 1117(a), a trademark owner may "recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of this action."  15 U.S.C. § 1117(a).  Under 15 U.S.C. § 1117(b), if the use of a counterfeit mark was intentional "the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee . . . ."  In assessing a defendant's profits "the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a).  Similarly, in order for LVM to recover "lost profits", LVM must prove lost sales with specificity.  <u>See</u> <u>e</u>.<u>g</u>. <u>Merch. Media LLC, v. H.S.M. Int'l</u>, 05 Civ. 2817 (JES), 2006 WL 3479022 at *11 (S.D.N.Y. Nov. 30, 2006), <u>citing</u> <u>PPX Enters. v. Audiofidelity Enters.</u>, 818 F.2d 266, 271 (2d Cir. 1987).

25.   LVM has presented no evidence of lost profits as a result of defendants' counterfeit sales.

26.   LVM relies upon a series of twenty-five (25) invoices from defendants purporting to show defendants' gross sales[5] from February 2, 2004 to June 3, 2004, and which total approximately, $21,130.26.  This total does not include (1) Invoice No. 0204-21, dated Feb, 11, 2004, which fails to indicate the total payment received and appears to be missing a second page; (2) a purchase made by LVM totaling $112.50 (see Invoice No. 0504-13, dated May 13, 2004, attached as Ex. C to the Max Decl.); (3) two invoices (Invoice No. 0304-40, dated Mar. 31, 2004 and Invoice No. 0404-17, dated April 14, 2004) which fail to indicate the price paid per handbag or the total revenue from the sales and (4) a sale made to a customer who paid his bill with a cashier's check in the amount of $2,370.00 drawn on a bank that does not exist (see Letter from Roger Himmel to Detective Stevenson, dated April 2, 2004, attached as Ex. B to the Max Decl.).[6]  In order to more accurately calculate defendants'

---

[5]These invoices also include sales of other handbags which Artex's employee, Roger Himmel, claims were non-infringing handbags (see Letter of Roger Himmel to Ted Max, Esq. and enclosed invoices, attached as Ex. B to the Max Decl.). Defendants, however, fail to present any evidence that these handbags, identified only by item number and ambiguous descriptions such as "Lady Hand Bag," do not also infringe LVM's trademarks.

[6]LVM claims that "based upon the documentation provided by defendant Artex to date, gross sales are at least $17,649.76" (Plf.'s Proposed Findings at 36).  LVM does not explain how it reached this figure or how it dealt with the anomalous transactions identified in the text.

profits I have included the sales indicated on the first page of
Invoice No. 0204-21, the sale to LVM indicated on Invoice No.
0504-13, and an estimate of the sales indicated on Invoice No.
0304-40 and Invoice No. 0404-17, obtained by multiplying the
number of units indicated on these invoices by approximate unit
prices based on the indicated styles.[7]  I have not, however,
included the sales for which the defendants were paid with a
fraudulent check (Invoice No. 0304-13) because defendants did not
receive any revenue from these sales.  The sum of the aforemen-
tioned invoices yields a total of $24,602.76, calculated as
follows:

```
Original Total:            $21,130.26
Invoice No. 0204-21:        $1,050.50
Invoice No. 0504-13:          $112.50
Invoice No. 0304-40:        $2,052.00
Invoice No. 0404-17:     +    $257.50
Total:                     $24,602.76
```

        27.  "Ordinarily, a plaintiff that has proved the
amount of infringing sales would be entitled to that amount
unless the defendant adequately proved the amount of costs to be
deducted from it."  Am. Honda Motor Co. v. Two Wheel Corp., 918
F.2d 1060, 1063 (2d Cir. 1990); Phat Fashions LLC v. Blue Max
Corp., 01 Civ. 3933 (KMW)(RLE), 2005 WL 1221838 at *2 (S.D.N.Y.
May 2, 2005) ("In the absence of any information from Blue Max on

---

        [7]The other invoices indicate prices for the Item Nos.
indicated on Invoice No. 0304-40 and Invoice No. 0404-17.  For
example, the price for "V-Lady Bags in White", Item No. V8-
23068W, is indicated on Invoice No. 0304-60.

costs, and because Blue Max has not cooperated in discovery, the Court finds that these estimated sales are a fair indicator of profits"); Gucci Am., Inc. v. Rebecca Gold Enter. Inc., 798 F. Supp. 177, 182 (S.D.N.Y. 1992) ("In stark contrast [to the plaintiff], the defendant must prove all elements of costs or deductions claimed").  In this case, the only evidence of defendants' costs consists of freight and shipping costs, totaling $1,054.00, listed on the invoices provided by the defendants.  I will deduct these costs from defendants' gross sales.  Therefore, under 15 U.S.C. § 1117(a), LVM would be entitled to $23,548.76 in damages plus costs and attorneys' fees.

28.  Trebling of actual damages under 15 U.S.C. § 1117(b) would also be warranted in this case because defendants acted willfully.  Therefore, if LVM had elected to obtain damages under 15 U.S.C. § 1117(a), it would be entitled to $70,646.28 plus costs and attorneys' fees.  See Gucci Am., Inc. v. Duty Free Apparel, Ltd., supra, 315 F. Supp.2d at 522 ("it is an 'unadventurous corollary' to also treble any determinable damages when awarding statutory damages because '[s]tatutory damages give even greater weight to the need to deter and punish'"), quoting Sara Lee Corp. v. Bags of N.Y., Inc., supra, 36 F. Supp.2d at 170.

29.  It is evident that the "actual damage" calculation under 15 U.S.C. § 1117(a),(b), necessarily involves a certain degree of approximation and inference based on the limited record

available in this case.  This is, however, inevitable when the defendants fail to provide complete and accurate records.  See Century 21 Real Estate LLC v. Paramount Home Sales, Inc., 06-CV-2861 (FB)(JMA), 2007 WL 2403397 at *4 (E.D.N.Y. Aug. 20, 2007) ("Although this method of calculating damages is speculative, I find it to be reasonable and appropriate . . . . it is defendants who are to blame for the inability to calculate an exact fig-ure"); Gucci Am., Inc. v. Duty Free Apparel, Ltd., supra, 315 F. Supp.2d at 520 ("The Second Circuit has held that a counterfeiter who keeps poor records must bear the burden of uncertainty in determining the damages award"), citing Louis Vuitton S.A. v. Spencer Handbags Corp., 765 F.2d 966, 972-73 (2d Cir. 1985); see also Deering, Milliken & Co. v. Gilbert, 269 F.2d 191, 193 (2d Cir. 1959).

### 3.   Statutory Damages

30.  "The lack of information regarding defendants' sales and profits make statutory damages particularly appropriate for these kinds of default cases."  See Century 21 Real Estate LLC v. Paramount Home Sales, Inc., supra, 2007 WL 2403397 at *4; Nike, Inc. v. Top Brand Co., Ltd., supra, 2006 WL 2884437 at *2; Phillip Morris USA Inc. v. Marlboro Express, supra, 2005 WL 2076921 at *8 ("Several courts have found statutory damages especially appropriate in default judgment cases due to infringer

nondisclosure." (internal citations omitted)); <u>Kenneth Jay Lane,</u>
<u>Inc. v. Heavenly Apparel, Inc.</u>, <u>supra</u>, 2006 WL 728407 at *6 ("In
crafting the statutory damages provision of the Lanham Act . . .
Congress took into account that oftentimes, counterfeiters
records are nonexistent, inadequate or deceptively kept in order
to willfully deflate the level of counterfeiting activity actu-
ally engaged in, making proving actual damages in these cases
extremely difficult if not impossible."), <u>citing</u> <u>Polo Ralph</u>
<u>Lauren, L.P. v. 3M Trading Co., Inc.</u>, <u>supra</u>, 1999 WL 33740332 at
*4.

        31.  Although defendants' actions constitute inten-
tional trademark counterfeiting, I conclude that LVM's request
for $1,000,000 in statutory damages per infringing mark, for a
total of $4,000,000 in damages, is not appropriate here.  Defen-
dants sold the counterfeit bags at issue here for between eight
and twelve dollars each.  Even if I assume that defendants marked
up the counterfeit bags by 300% and enjoyed a profit of four to
eight dollars per bag, defendants would have had to sell between
500,000 and 800,000 bags to earn $4,000,000 in profits.

        32.  On the other hand, putting aside the gaps in
defendants' invoices identified above, I believe that the esti-
mate of $24,602.76 likely understates defendants' illegal revenue
because it does not take into account other sales of infringing
merchandise that were not disclosed by the defendants.  The
absence of Invoice No. 0504-13, reflecting LVM's order, from

defendants' submission provides compelling evidence that Artex's records are incomplete and that defendants received revenues from the counterfeiting that exceed those indicated in these invoices.

33.  Given the small scale of defendants' operation,[8] its limited resources, and the fact that handbags were just one of a variety of products that defendants sold, I conclude that it is likely that the defendants had sales in the neighborhood of 2,000 to 4,000 handbags,[9] generating a profit of between $8,000 and $32,000.  Therefore, I conclude that $72,000 ($18,000 per mark), slightly more than treble the gross sales indicated in the invoices submitted by the defendants is more than sufficient to compensate LVM for any damages it suffered and to deter similar infringements in the future.  See Gucci Am., Inc. v. Duty Free Apparel, Ltd., supra, 315 F. Supp.2d at 520 ("To the extent possible statutory damages 'should be woven out of the same bolt of cloth as actual damages'"), quoting 4 Melville B. Nimmer & David Nimmber, Nimmer on Copyright § 14.04[E][1] at 14-69 (2003).

---

[8]Artex employed approximately three individuals, Roger Himmel, Waker Hsu, and Teresa (Himmel Dep. at 18-20).

[9]The invoices submitted by the defendants indicate sales of 1,808 handbags.

4.   <u>Attorneys' Fees</u>

34.   LVM also seeks $30,602.09 in attorney's fees and
$8,308.90 in costs incurred in bringing this action (Declaration
of Charles LeGrand, Esq., dated January 8, 2009 ("LeGrand Decl.")
at ¶ 24).   Under 15 U.S.C. § 1117(a) of the Lanham Act a court
may award attorneys' fees in "exceptional" circumstances.
"Willful infringement" is an "exceptional circumstance" warrant-
ing the award of attorney's fees.   <u>Bambu Sales, Inc. v. Ozak
Trading Inc.</u>, <u>supra</u>, 58 F.3d at 854.   As previously discussed, I
have concluded that defendants' infringement was willful, and an
award of reasonable attorney's fees is, therefore, appropriate.

35.   "The most useful starting point for determining
the amount of a reasonable fee is the number of hours reasonably
expended on the litigation multiplied by a reasonable hourly
rate."   <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v.
County of Albany</u>, 522 F.3d 182, 186 (2d Cir. 2008), <u>quoting</u>
<u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983).   This figure was
previously referred to as the "lodestar," but in <u>Arbor Hill</u> the
Second Circuit abandoned the use of this metaphor as unhelpful.
<u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of
Albany</u>, <u>supra</u>, 522 F.3d at 190; <u>see also</u> <u>Green v. Torres</u>, 361
F.3d 96, 98 (2d Cir. 2004) (<u>per</u> <u>curiam</u>) ("'[T]he starting point
for the determination of a reasonable fee is the calculation of
the lodestar amount.'"), <u>quoting</u> <u>Hensley v. Eckerhart</u>, <u>supra</u>, 461

U.S. at 433; Hnot v. Willis Group Holdings Ltd., 01 Civ. 6558
(GEL), 2008 WL 1166309 at *1 (S.D.N.Y. Apr. 7, 2008).  LVM claims
a lodestar figure of approximately $30,602.09 based on 54 hours
of legal work performed by attorneys charging between $325.00 and
$540.00 per hour, 18.3 hours expended by a legal assistant
charging between $105 and $190 per hour, and a number of staff
hours billed by legal assistants and project assistants (LeGrand
Decl. at ¶¶ 8, 10, 12-14).

        36.  LVM has provided billing records for all of its
legal assistants and attorneys but other than the 18.3 hours
expended by legal assistant Sarah Kickham, LVM has failed to
total up the "lesser amount" of hours expended by legal assis-
tants Audrey Wilkins and Kendall Wostl, project analyst Jennifer
Keser, managing clerks Jack Bove and Ray Corona, and two individ-
uals -- "L. Orfe" and "Dorsainvil" -- whose positions are not
described (see Billing Records attached to the LeGrand Decl.).
Nor has LVM provided the total hours expended by William Littman,
Esq. or Darci Bailey, Esq.  I have reviewed all of the records
submitted and summarized the hours and rates in the table at
pages 33-35, infra.

        A.  Reasonable Hourly Rates

        37.  The hourly rates used in making a fee award should
be "what a reasonable, paying client would be willing to pay."

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, supra, 522 F .3d at 184.  This rate should be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984); accord Reiter v. MTA N.Y. City Tran. Auth., 457 F.3d 224, 232 (2d Cir. 2006), cert. denied, 549 U.S. 1211 (2007).  In determining a reasonable hourly rate, the court should not only consider the rates approved in other cases in the District, but should also consider any evidence offered by the parties.  Farbotko v. Clinton Co., 433 F.3d 204, 208-09 (2d Cir. 2005).  The Court is also free to rely on its own familiarity with prevailing rates in the District.  A.R. ex rel. R.V. v. N.Y. City Dep't of Educ., 407 F.3d 65, 82 (2d Cir. 2005); Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987).

    38.  Finally, the Second Circuit has identified the following factors that a court should consider in determining what a reasonable client would be willing to pay:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether the attorney had an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration),

23

and other returns (such as reputation, etc.) that an attorney might expect from the representation.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, supra, 522 F.3d at 184.

39.   In all cases, "the fee applicant has the burden of showing by 'satisfactory evidence -- in addition to the attorney's own affidavits' -- that the requested hourly rates are the prevailing market rates." Farbotko v. Clinton Co., supra, 433 F.3d at 209, quoting Blum v. Stevenson, supra, 465 U.S. at 896 n.11.

40.   Several attorneys at Mintz, Levin, Cohn, Ferris Glovsky and Popeo, P.C. ("Mintz Levin) represented LVM in this action:   Theodore Max, Esq., Charles LeGrand, Esq., Kevin Ainsworth, Esq., Darci Bailey, Esq., and William Littman, Esq. (LeGrand Decl. ¶ 10-15).   Max, lead counsel in this action, was admitted to practice in New York in 1985 and over the course of this action billed 29.3 hours at rates ranging from $394.25 to $540.00 per hour (see LeGrand Decl. ¶ 10; Theodore Max Lawyer Profile, http://www.martindale.com/Theodore-C-Max/8075836-lawyer.htm (last visited Jan. 29, 2009)).

41. Charles LeGrand, an associate who was admitted to practice in New York in 1997, seeks compensation for 15.9 hours[10]

---

[10]According to my calculations, the billing records submitted indicate that LeGrand billed approximately 26.7 hours on this matter.   It is impossible, based on the evidence

(continued...)

of work at rates ranging from $323.70 to $470.00 per hour (<u>see</u> LeGrand Decl. ¶ 12; Charles LeGrand Lawyer Profile, http://www.martindale.com/Charles-A- LeGrand/8075837-lawyer.htm (last visited January 29, 2009)).

42.  Kevin Ainsworth, a Mintz Levin Partner admitted to practice in 1994, billed 2.5 hours at a rate of $440 per hour (<u>compare</u> Invoice No. 8308562, attached to the LeGrand Decl. (Indicating that Ainsworth billed at a rate of $440 per hour) <u>with</u> LeGrand Decl. ¶ 15 (stating that Ainsworth billed 2 hours at a rate of $400/hour); <u>see also</u> Kevin Ainsworth Lawyer Profile, http://www.martindale.com/Kevin-N-Ainsworth/490314-lawyer.htm).

43.  Darci Bailey and William Littman, intellectual property associates, billed 8.8 hours, each at a rate of $325 per hour (LeGrand Decl. ¶ 14)

44.  Finally, legal assistant Sarah Kickham billed 18.3 hours at a rate of between $105 and $190 per hour  (LeGrand Decl. ¶¶ 13).

45.  The rates charged by the Mintz Levin attorneys, while on the high side, appear reasonable.  Theodore Max's hourly rate of between $475 and $540, for example, appears reasonable in light of his approximately twenty-four years' experience in the

---

[10](...continued)
submitted, to determine whether this difference is due to a mathematical error or to counsel subtracting certain tasks, unrelated to this litigation, from his fee request.

practice of law and the fact that he practices intellectual
property law at a large Manhattan law firm.  See e.g. Entral
Group Int'l, LLC v. Sun Sports Bar Inc., 05-CV-4836 (CBA), 2007
WL 2891419 at *10 (E.D.N.Y. Sept. 28, 2007) (approving hourly
rate of $560.00 in copyright infringement case); Nat'l Ass'n for
the Specialty Food Trade, Inc. v. Construct Data Verlag Ag, 04
Civ. 2983 (DLC)(KNF), 2006 WL 5804603 at *6 (S.D.N.Y. Dec. 11,
2006) (in a trademark infringement case, awarding attorney's fees
of $400-$540 per hour for partners); Stevens v. Aeonian Press,
Inc., 00 Civ. 6330 (JSM), 2002 WL 31387224 at *5 (S.D.N.Y. Oct.
23, 2002) (approving hourly rate of $460.00 for partners at large
Manhattan firm in copyright infringement case); A.V. by Versace,
Inc. v. Gianni Versace S.p.A., 96 Civ. 9721 (PKL)(THK), 98 Civ.
0123 (PKL)(THK), 2002 WL 1046705 at *2 (S.D.N.Y. May 23, 2002)
(approving an hourly rate of between $320 and $355 for Theodore
Max); Yurman Designs, Inc. v. PAJ, Inc., 125 F. Supp.2d 54, 58
(S.D.N.Y. 2000), aff'd, 262 F.3d 101 (approving partner rate of
$520.69 per hour for attorneys handling copyright and trademark
infringement litigation).

       46.  In addition, Max agreed to take a seventeen
percent discount in his hourly rate, yielding an hourly rate of
between $435 and $448.20, beginning in October 2004 as a courtesy
to LVM.

47.   The hourly rates of $390.00 to $470.00 charged by the associates and junior partner representing Vuitton fall at the very top of the spectrum of reasonable hourly rates for associates.  Even considering the fact that LeGrand has been practicing for eleven years and has published several articles on intellectual property, his hourly rate is higher than some courts in this circuit would allow (LeGrand Decl. ¶ 11).  See Cheesecake Factory Assets Co. LLC v. Philadelphia Cheese Steak Factory Inc., 05-CV- 3243 (NGG) (RML), 2008 WL 2510601 at *5 (E.D.N.Y. June 20, 2008) ("recent case law in this circuit has not approved rates over $300 per hour for associates"), citing DCH Auto Group (USA) Inc. v. Fit You Best Automobile, Inc., CV-05-2973, 2006 WL 279055 at *6 (E.D.N.Y. Jan. 10, 2006) (determining that rates of $205-$215 per hour for associates to be "demonstrably excessive."); King v. STL Consulting, LLC, 05 CV 2719 (SJ), 2006 WL 3335115 at *7 (E.D.N.Y. Oct. 3, 2006) (collecting cases and finding that in this district, hourly rates range from $200 to $375 for partners, $200 to $250 for senior associates . . . and $70 for paralegals) but Cf. Microsoft Corp. v. Computer Care Center, Inc., 06-CV-1429 (SLT) (RLM), 2008 WL 4179653 at *14-*15 (E.D.N.Y. Sept. 10, 2008) (approving a rate of $385 per hour for associates working in a trademark infringement case but reducing the overall amount due to the fact that the associate performed many clerical tasks that did not require legal expertise); Heng Chan v. Sung Yue Tung

27

Corp., 03 Civ. 6048 (GEL), 2007 WL 1373118 (S.D.N.Y. May 8, 2007)
(upholding award of $300/hour for sixth-year associates and
expressly relying on the size and high overhead associated with
running a large lawfirm such as Skadden Arps).  In this case, I
conclude that LeGrand's hourly rate is reasonable given his years
of experience, his specialization in intellectual property, his
employment with a mid-size New York law-firm,[11] and the fact that
his rate was also discounted, beginning in October 2004, to rates
of $344 to $390.10 per hour.

48.  LVM has not, however, made any showing of reason-
ableness with regard with to the hourly rates sought for the
other attorneys, paralegals, and legal assistants who billed
hours on this case, nor has LVM explained why one clerk, Jack
Bove, billed at a rate between $205 and $285 per hour while the
rest of the staff on this case billed at rates of $105 to $165
per hour.  LVM also has not explained why two individuals, L.
Orfe and Dorsainvil, billed close to $200 per hour.  Finally, LVM
has not explained why the rates of Jack Bove and Sarah Kickham
increased over the course of the litigation.[12]  "Where the moving

---

[11]Mintz Levin employs 480 attorneys in 8 different offices.
See Mintz Levin Fact Sheet, available at http://www.mintz.com/ne-
ws.php?Page=ForThePress (last visited January 29, 2009).

[12]Sarah Kickham's rate increased from $105 per hour to $110
per hour to $190 per hour (compare Invoice No. 8353227
(indicating a billing rate of $105/hr), with Invoice No. 8358088
(indicating a billing rate of $110/hr), with invoice No. 8370386
                                                    (continued...)

party fails to provide information on the attorneys' and paraleg-
als' backgrounds and experience, courts have used their discre-
tion to award fees at a rate lower than requested." Prot. One
Alarm Monitoring, Inc. v. Executive Prot. One Sec. Serv., LLC,
553 F. Supp.2d 201, 209 (E.D.N.Y. 2008) (reducing an associate's
compensation from $275/hour to $250/hour and reducing a paraleg-
al's compensation from $135/hour to $80/hour), citing Nat'l Ass'n
for the Specialty Food Trade, Inc. v. Construct Data Verlag Ag,
supra, 2006 WL 5804603 at *6 (reducing paralegals' rates from
$200/hr and $215/hour to $180/hour); Yea Kim v. 167 Nail Plaza,
Inc., 05 Civ. 8560 (GBD)(GWG), 2009 WL 77876 at *9 (S.D.N.Y. Jan
12, 2009)(reducing the paralegal's billing rate to $50/hour due
to plaintiff's failure to provide any information regarding their
expertise or experience); Century 21 Real Estate, LLC v. Raritan
Bay Realty, Ltd., CV-07-1455 (CPS), 2008 WL 4190955 at *10
(E.D.N.Y. Sept. 3, 2008)("no paying client would be content to
pay such rates -- much less the even higher rates that Century 21
seeks -- without some explanation of what the 'staff' and 'other'
designations connote and the qualifications of the incumbents in
those positions"); Cruz v. Local Union No. 3 of Intern. Broth. of

---

[12](...continued)
(indicating a billing rate of $190/hr)).  Jack Bove's billing
rate increased from $205 to $215 to $285.71 (compare Invoice No.
8308562 (indicating a billing rate of $205), with Invoice No.
8338334 (indicating a billing rate of $215), with Invoice No.
8344713 (indicating a billing rate of approximately $285.71)).

29

Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994)(The burden is on the moving party to show that the requested fee is reasonable). Accordingly, as reflected in the table at the end of Section III(C)(4)(B), infra, I have reduced the billing rates for every member of the staff to $100 per hour.  I have also reduced the billing rates for associates Darci Bailey and William Littman to $200 per hour and the rate for partner Kevin Ainsworth to $300 per hour.

## B.   Reasonable Hours Expended

49.  In assessing the number of hours for which compensation should be awarded, "[t]he court's role is not to determine whether the number of hours worked by [the movant's] attorneys represents the most efficient use of resources, but rather whether the number is reasonable."  In re Arbitration Between P.M.I. Trading Ltd. v. Farstad Oil, 160 F. Supp.2d 613, 616 (S.D.N.Y. 2001).  "If a court finds that the fee applicant's claim is excessive, or that time spent was wasteful or duplicative, it may decrease or disallow certain hours or, where the application for fees is voluminous, order an across-the-board percentage reduction in compensable hours."  Santa Fe Natural Tobacco Co. v. Spitzer, 00 Civ. 7274 (LAP), 00 Civ. 7750 (LAP), 2002 WL 498631 at *3 (S.D.N.Y. Mar. 29, 2002), citing In re

"Agent Orange" Products Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987).

50.   The party seeking fees bears the burden of establishing that the number of hours for which compensation is sought is reasonable.  Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, supra, 34 F.3d at 1160, citing Hensley v. Eckerhart, supra, 461 U.S. at 437; Patrolmen's Benevolent Ass'n of New York v. City of New York, 97 Civ. 7895 (SAS), 98 Civ. 8202 (SAS), 2003 WL 21782675 at *2 (S.D.N.Y. July 31, 2003).

51.   LVM seeks reimbursement for a total of 56.5 hours of time expended by Mintz Levin attorneys on this case and an unspecified number of staff hours.[13]  LVM has submitted contemporaneous time records, as required by N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983), that set forth for the attorneys involved the dates on which services were performed, the hours spent and the nature of the services performed.  See Wells Fargo Bank v. BrooksAmerica Mortgage Corp., 02 Civ. 4467 (HB), 2004 WL 2754855 at *1 (S.D.N.Y. Dec. 1, 2004), citing Mikes v. Straus, 274 F.3d 687, 706 (2d Cir. 2001).  Having reviewed LVM's submission, I believe that Mintz Levin has adequately and accurately documented its hours on this matter.

---

[13]My review of the billing records indicates that paralegals and clerks spent a total of 44.5 hours working on this matter.

52.  Although, the hours are adequately documented, I am not persuaded that compensation for all of these hours is justified.  A large percentage of the hours billed by Mintz Levin consists of the time spent deposing two Artex employees which yielded little new information, attempts to subpoena Artex's bank records,[14] and an investigation of whether Artex had continued its trademark infringing activities under a new name (LeGrand Decl. ¶ 23).  If any further evidence of trademark infringement was generated by these activities, it has not been presented to me.

53.  The large number of hours expended on this relatively straightforward trademark action has convinced me that a fifteen-percent reduction in the number of hours is warranted.  See In re "Agent Orange" Product Liab. Litig., supra, 818 F.2d at 237("the district court has the authority to make across-the-board percentage cuts in hours as a practical means of trimming fat from a fee application")(internal citations omitted); United States Football League v. National Football League, 887 F.2d 408, 415 (2d Cir. 1989); Days Inn Worldwide, Inc. v. Amar Hotels, Inc., 05 Civ. 10100 (KMW)(KNF), 2008 WL 2485407 at *10 (S.D.N.Y. June 18, 2008) (reducing plaintiff's fees by 75 percent from $20,057.54 to $5,014.38 because the case involved a settled area

---

[14]These bank records were never included in any of LVM's submissions.

of law and the defendant defaulted); <u>La Barbera v. J.E.T. Res.,</u> <u>Inc.</u>, 396 F. Supp.2d 346, 352 (E.D.N.Y. 2005)(hours reduced by fifty percent); <u>DCH Auto Group (USA) Inc. v. Fit You Best Automo-</u> <u>bile, Inc.</u>, <u>supra</u>, 2006 WL 279055 at *6 (total requested reduced by thirty-five percent); <u>S.E.C. v. Goren</u>, 272 F. Supp.2d 202, 213 (E.D.N.Y. 2003) (thirty percent reduction in the hours billed); <u>GTFM, Inc. v. Solid Clothing, Inc.</u>, 01 Civ. 2629 (DLC), 2002 WL 31886349 at *3 (S.D.N.Y. Dec. 26, 2002)(deducting $20,000 from the fee application because defendant held too many conferences).

54.  As reflected in the table below, a reduction of LVM's request by fifteen percent, at the adjusted rates discussed above, yields a fee award of $22,236.16, and I recommend that LVM be awarded this amount for its legal fees.

| <u>Name</u> | Previous Hours<br>& Billing Rate | New Hours<br>& New Rate | New<br><u>Total</u> |
|---|---|---|---|
| <u>Attorneys</u>:<br>T. Max | 2.5 hrs at $475 | 2.13 hrs at<br>$475/hr | $1,011 |
|  | 10.5 hrs at $435.75[15] | 8.72 hrs at<br>$435.75/hr | $3,799 |

---

[15]Beginning in November, 2004, Max's billing rate increased to $525/hr.  At the same time, he gave his clients the aforementioned 17 percent discount, effectively reducing his billing rate to $435.75/hr.

|  | 16.3 hrs at $448.2[16] | 13.53 hrs at $448.20 | $6,064 |
| C. LeGrand | 0.3 hrs at $390/hr<br>9.6 hrs at $344/hr[17]<br>16.8 hrs at $390.8/hr[19] | 15.9 hrs at $390/hr[18] | $6,201 |
| K. Ainsworth | 2.5 hrs at $440/hr | 2.12 hrs at $300/hr | $637 |
| W. Littman | 4.5 hrs at $325/hr | 3.8 hrs at $200/hr | $760 |
| D. Bailey, | 4.3 hrs at $325/hr | $3.65 hrs at $200/hr | $730 |

Legal Assistants/Project Assistants

| S. Kickham | 18.3 hrs at $105-$190/hr | 15.55 hrs at $100/hr | $1,555 |
| J. Keser | 3 hrs at $150/hr | 2.55 hrs at $100/hr | $255 |
| A. Wilkins | 6.4 hrs at $165/hr | 5.44 hrs at $100/hr | $544 |

---

[16]Again in October, 2005, Max increased his billing rate to $540/hr; applying the 17 percent discount to this new billing rate renders an effective rate of $448.20/hr.

[17]Beginning in January, 2005, LeGrand increased his billing rate to $415/hr and began giving his clients a 17 percent discount, effectively reducing his billing rate to $344/hr.

[18]As discussed above, LVM's application seeks an award of attorneys' fees for 15.9 hours of LeGrand's time (see LeGrand Decl. ¶ 12). Accordingly, I have adopted LVM's estimate of the number of hours spent by LeGrand on this matter. I have not reduced LeGrand's hours by 15-percent because LVM only seeks an award of approximately 60 percent of the hours noted in the attached billing records, which I believe is reasonable.

[19]In October 2005, LeGrand increased his billing rate to $470/hr. The 17 percent discount reduced this rate to $390.8/hr.

| K. Wostl | 1.5 hrs at $165/hr | 1.27 hrs at $100/hr | $127 |
| Dorsainvil | 0.10 hrs at $195/hr | 0.085 hrs at $100/hr | $8 |
| L. Orfe[20] | 0.6 hrs at $150<br>0.1 hrs at $200/hr | 0.59 hrs at $100/hr | $59 |

Clerks

| R. Corona | 1.5 hrs at $125/hr | 1.27 hrs at $100/hr | $127 |
| J. Bove[21] | 1.0 hrs at $205/hr<br>2.5 hrs at $215/hr<br>0.7 hours at $285/hr | 3.57 hrs at $100/hr | $357 |

Total:   $22,234.00

5.   Costs

55.   LVM also requests an award of costs in the amount of $8,308.90.  These costs include

| Photocopies | $3,642.95 |
| Filing Fees | $1,812.20 |
| Court Reporter | $1,616.37 |
| Interpreter | $ 564.80 |
| Westlaw Research | $ 316.36 |
| Postage/Air Freight | $ 241.08 |
| Facsimile | $ 40.00 |
| Transportation | $ 75.14 |

---

[20]Compare Invoice No. 8353227 (indicating a billing rate of $150 per hour), with Invoice No. 8370386 (indicating a billing rate of $200 per hour).

[21]Compare Invoice No. 8308562 (indicating a billing rate of $205), with Invoice No. 8338334 (indicating a billing rate of $215), with Invoice No. 8344713 (indicating a billing rate of approximately $285.71).

These are the types of routine costs typically awarded when a defendant defaults. <u>See</u> <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 369 F.3d 91, 98 (2d Cir. 2004) <u>amended</u> <u>and</u> <u>superseded</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u>, 522 F.3d 182 (approving the award of online research costs); <u>Kuzma v. Internal Revenue Serv.</u>, 821 F.2d 930, 933-34 (2d Cir. 1987)("Identifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs" are compensable); <u>Duke v. County of Nassau</u>, 97-CV-1495 (JS), 2003 WL 23315463 at *6 (E.D.N.Y. Apr. 14, 2003) ("Courts have continuously recognized the right for reimbursement of costs such as photocopying, postage, [and] transportation"); <u>Tri-Star Pictures, Inc. v. Unger</u>, 42 F. Supp.2d 296, 306 (S.D.N.Y. 1999).

56. Accordingly, I conclude that LVM is entitled to $8,308.90 in costs.

## IV.   Conclusion

For all the foregoing reasons, I respectfully recommend that damages be assessed against the defaulting defendants in the amount of $72,000.00 plus $22,234.00 in attorney's fees and $8,308.90 in costs for a total award of $102,542.90.

36

V.   <u>Objections</u>

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report and Recommendation to file written objections.  <u>See</u> <u>also</u> Fed.R.Civ.P. 6(a) and 6(e).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Deborah A. Batts, United States District Judge, 500 Pearl Street, Room 620, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 2510, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Batts.  FAILURE TO OBJECT WITHIN TEN (10) DAYS **<u>WILL</u>** RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993); <u>Frank v. Johnson</u>, 968 F.2d 298, 300 (2d Cir.

1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir.

1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-38 (2d Cir. 1983).


Dated:   New York, New York
         August 17, 2009


                              Respectfully submitted,


                              HENRY PITMAN
                              United States Magistrate Judge


Copies mailed to:

Theodore C. Max, Esq.
Charles A. LeGrand, Esq.
Sheppard Mullin Richter and Hampton, LLP
30 Rockefeller Plaza
New York, New York 10012

Artex Creative International Inc.
21720 South Wilmington Ave. No.304,
Long Beach, California, 90810